UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**EURIE A. STAMPS, JR. and NORMA**  )
**BUSHFAN-STAMPS, Co-Administrators of** )
**the Estate of Eurie A. Stamps, Sr.,** )
                                    )      Civil No.
       Plaintiffs,         )      12-11908-FDS
                                    )
       v.                  )
                                    )
**TOWN OF FRAMINGHAM and PAUL K.**  )
**DUNCAN,**                         )
                                    )
       Defendants.         )
                                    )
_____)

## MEMORANDUM AND ORDER ON
## PLAINTIFFS' MOTION TO COMPEL

**SAYLOR, J.**

### I.  Background

This is a civil rights action arising out of the shooting of an individual during the execution of a search warrant.  On January 25, 2011, Eurie Stamps, Sr., was shot and killed in his home by defendant Paul Duncan, an officer of the Framingham Police Department.  Plaintiffs Eurie Stamps, Jr., and Norma Stamps are the co-administrators of the elder Stamps's estate.  They have brought suit on behalf of the estate against Duncan and the Town of Framingham, alleging violations of the constitutional rights of the elder Stamps under 28 U.S.C. § 1983, and wrongful death under the Massachusetts Torts Claims Act, Mass. Gen. Laws ch. 258, § 2.

The Middlesex District Attorney's Office performed an investigation into Stamps's death to determine whether Duncan, or any other individual, should be prosecuted.  The office decided against prosecuting Duncan.

Plaintiffs have subpoenaed the DA's Office for its investigative file on Stamps's death. The DA's Office refused to produce the file, contending that the documents were privileged. Plaintiffs then filed a motion to compel, which was referred to Magistrate Judge Robert B. Collings.

On December 3, 2013, the Magistrate Judge granted the motion to compel as to a number of the disputed documents and directed that others be produced for *in camera* inspection. Following the *in camera* inspection, the Magistrate Judge granted the motion to compel as to some documents but denied it as to others. In particular, the Magistrate Judge ruled that the documents on pages 1-16, 100-01, 150-202, 817, and 919-24 were not privileged because the DA's office had not provided evidence of "who made the notes, when they were made, or how they were intended to be used." (Magistrate Judge's Mem. and Order, Docket No. 71, at 3). The Magistrate Judge also ruled that the documents on pages 146-49, 211-14, and 323-24 were protected by the deliberative process privilege, and the documents on pages 262-63 were protected by the attorney work-product doctrine.

On March 3, 2014, the DA's office filed a motion for reconsideration, contending that the documents on pages 1-16, 100-01, 150-202, 817, and 919-24 were protected by the attorney work-product doctrine. As part of that motion, it supplemented the record with an affidavit from John Verner, the assistant district attorney who investigated Stamps' death. In his affidavit, Verner stated that he personally prepared the documents on pages 1-16, 150-202, and 817 as part of his review of Stamps's death for potential criminal liability. (Verner Aff., Docket No. 75, Ex. 1 ¶ 4). He also stated that the documents on pages 100-01 were prepared by a police officer who was participating in the investigation; he remembers that a police officer handed him the notes at

the scene of Stamps's death, but does not remember which officer. (*Id.* ¶ 5). Finally, he states that he wrote the handwritten notes on pages 919-24 as part of his investigation. (*Id.* at 6).

The Magistrate Judge denied the motion for reconsideration, stating that it would be unfair for him to consider the late production of relevant evidence on the issue of privilege. The DA's office filed an objection to the Magistrate Judge's order on the motion for reconsideration, contending that it did not discover that Verner wrote the notes until February 27, 2014, and that the timing of the production of Verner's affidavit did not constitute a waiver of the privilege.

Plaintiffs have also filed an objection to the Magistrate Judge's order, contending that the deliberative process privilege and the attorney work-product doctrine do not apply to the documents on pages 146-49, 211-14, 262-63, and 323-24.[1]

## II. Standard

A party may object to a magistrate judge's report and recommendation on nondispositive matters. Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 42(d)(3). Under Rule 45, a party withholding privileged information under a claim that it is privileged must (1) expressly make the claim and (2) describe the nature of the withheld documents that will enable the parties to assess the claim. Fed. R. Civ. P. 45(e)(2)(A). In federal cases, "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of

---

[1] To the extent that the Magistrate Judge's order was not objected to, it will be adopted.

privilege." Fed. R. Evid. 501.[2]

"In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery." *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000). Where, as here, a party asserts a qualified privilege,

> a trial court is . . . obliged to balance conflicting interests on a case-by-case basis in ruling on particular claims of privilege. When particular documents have been determined to be covered by a qualified privilege, a party seeking discovery of those documents must make a threshold showing of need, amounting to more than "mere speculation." Once this burden is met, an *in camera* review of the documents in question . . . is a relatively costless and eminently worthwhile method to insure that the balance between one party's claims of irrelevance and privilege and the other's asserted need for the documents is correctly struck.

*Association for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984) (internal quotations and citations omitted). While "the interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources," "the interest of the party asserting a privilege tends to be strongest when the information in question falls squarely within the definition of privilege, and its disclosure would undermine the public interest in free, candid and uninhibited exchange of information." *Id.*

## III. Analysis

### A. The Deliberative-Process Privilege

It is well-settled under federal law that there is a qualified privilege "for intragovernmental memoranda containing opinions or recommendations of policy-making rather

---

[2] Plaintiffs have also brought state-law claims for wrongful death. State law ordinarily governs assertions of privilege as to state-law claims. Fed. R. Evid. 501. However, "[i]n a federal question case where the court is also hearing state law claims pursuant to supplemental jurisdiction, federal privilege law governs the claims in the action." *Krolikowski v. University of Massachusetts*, 150 F. Supp. 2d 246, 248 (D.Mass. 2001); *see also Williams v. City of Boston*, 213 F.R.D. 99, 100 (D. Mass. 2003); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226-27 (D. Mass. 1997) (holding the same and collecting cases from the Second, Third, Seventh, and Eleventh Circuits). Because the Court has federal-question jurisdiction over the Section 1983 claims and supplemental jurisdiction over the state-law claims in this case, federal privilege law applies.

than purely factual import." *Hall*, 734 F.2d at 66. "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). To qualify for the privilege, the government must prove the document at issue was (1) "prepared prior to a final decision in order to assist an agency decisionmaker in arriving at his decision," and (2) "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Town of Norfolk v. United States Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992) (internal quotations omitted).

### 1. **Objections by Plaintiffs**

Plaintiffs contend that the documents on pages 146-49, 211-14, and 323-24 are not covered by the deliberative-process privilege because the privilege does not protect observations of fact or comments about routine administrative matters. However, "handwritten notes taken in the course of witness interviews and while reviewing transcripts are part of the deliberative process which could reflect judgments regarding [a prosecutor's] decision not to prosecute [a] case." *Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432, 436 (D.N.H. 1989); *see also Starkey v. Birritteri*, 2013 WL 3984599, at *2 (D. Mass. Aug. 2, 2013) (noting the deliberative-process privilege applies "not only to decisions made by federal government agencies, but also decisions by prosecutors"). Documents discussing whether criminal charges should be brought against an individual are direct parts of a deliberative process on legal matters, and therefore fall under the deliberative-process privilege. *See Town of Norfolk*, 968 F.2d at 1458.

The documents on pages 146-49 consist of a memorandum from the district attorney to his subordinates commenting on a draft report regarding the shooting, with handwritten notes

from a recipient addressing the district attorney's points. It was made in preparation for a decision on what action to take after the shooting, and therefore falls within the deliberative-process privilege. The documents on pages 211-14 and 323-24 are e-mails between employees of the DA's office about the investigation into the shooting. They were all made before the final decision not to prosecute was made, and therefore also fall under the deliberative-process privilege.

The deliberative-process privilege is a qualified privilege, and therefore can be overcome if the information sought is "relevant, helpful, and unavailable from other sources." *Hall*, 734 F. 2d at 66. If a party can show its particular need for the information in a privileged document outweighs the public interest in maintaining the privilege, the deliberative-process privilege can be overcome. *In re Pharmaceutical Indus. Avg. Wholesale Price Lit.*, 254 F.R.D. 35, 40 (D. Mass. 2008). Plaintiffs contend that they need the documents on pages 146-49, 211-14, and 323-324 "to ascertain the facts regarding the conduct of Officer Duncan[,] . . . to identify and examine the circumstances surrounding the incident[,] and to conduct depositions with full knowledge of the facts." (Pl. Mem. in Supp. of Mot. to Compel, Docket No. 41, at 4). The public interest in the deliberative-process privilege is to protect "frank discussion of legal or policy matters in writing." *N.L.R.B.*, 421 U.S. at 150.

The documents at issue contain the DA's impressions of the facts surrounding the shooting, handwritten comments on those impressions, and routine e-mails between staff. Those impressions are exactly the kind of frank discussion that the deliberative-process privilege is designed to protect. Although the documents do contain some facts surrounding the shooting, those facts are limited and apparently can be obtained from other sources.

6

Accordingly, the Court finds that the Magistrate Judge's order sustaining the assertion of the deliberative-process privilege as to the documents on pages 146-49, 211-14, and 323-24 was not clearly erroneous or contrary to law.

## 2. Objections by the DA's Office

The DA's office contends that the documents on pages 1-16, 150-202, 817, and the handwritten notes on pages 919-24 are protected by the deliberative-process privilege. The Magistrate Judge rejected the claim of privilege on the grounds that the office provided the basis for its assertion of the privilege only after he had decided the motion.

Under Fed. R. Civ. P. 45, the party claiming that documents are privileged must describe the nature of those documents so the parties can assess the claim. "[C]ourts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log." *In re Grand Jury Subpoena*, 274 F.3d 563, 575 (1st Cir. 2001) (collecting cases). "A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *Id.* at 576. "[T]he failure to produce a log of sufficient detail [also] constitutes a waiver of the underlying privilege or work product claim." Charles A. Wright & Arthur R. Miller, 8 Fed. Prac. & Proc. Civ. § 2464 (3d ed.).

Originally, the DA's office provided no information as to who made the notes at issue, why they were made, or how they were intended to be used. Because that information was not provided, the DA's office failed to comply with Rule 45(d)(2) by failing to produce a privilege log containing enough detail to allow the Magistrate Judge to evaluate its claim of privilege.

The DA's office has subsequently represented to the Court that it only discovered the notes were written by Verner after February 27, 2014. (Obj. to Mot. to Reconsider, Docket No.

81, at 5-6). It contends that "[t]here were almost 1,000 documents responsive to [plaintiffs'] subpoena" and therefore "[t]o have required the DA, . . . to have that large quantity of documents reviewed by every person at the DA's office . . . who may have written the notes as part of the investigation into Mr. Stamps' death would have [required] the DA to meet an unduly high standard." *Id.* at 6.

That statement is somewhat exaggerated. First, the Magistrate Judge ordered ninety-nine documents produced on December 3, 2013 for an *in camera* review. It is unclear why the DA's office did not conduct a narrower review of those specific documents when it became clear they were the only ones left in dispute. Second, it does not appear that all the disputed documents (for example, e-mails that included the names of the sender and recipients) would had to have been reviewed by every person in the DA's office who investigated Stamps's death.

However, "[p]rivilege logs do not need to be precise to the point of pedantry. . . . Rule 45(d)(2) [requires] a party who asserts a claim of privilege to do the best that he reasonably can to describe the materials to which his claim adheres." *In re Grand Jury Subpoena*, 274 F.3d at 576. Courts also "should be cautious about finding implied waivers." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003). Waiver of privilege is a sanction that is reserved for "cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2016.1 (internal quotation omitted). Thus, "[w]aiver is appropriate where the responding party's conduct evinces a 'deliberate pattern of delay' and is 'egregious.'" *In re Dep't of Justice Subpoenas to ABC*, 263 F.R.D. 66, 71 (D. Mass. 2009)

8

(quoting *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 10-11 (1st Cir. 1991)). While other sanctions may be appropriate for late disclosure, waiver—the most extreme sanction—should be used rarely.

The DA's office appears to have made a good faith attempt to comply with Rule 42(d)(3). Although it should have conducted a more thorough review of the disputed documents and provided the information in the Verner affidavit at an earlier date, the late disclosure does not rise to the level of waiver of the deliberative-process privilege. The office also does not appear to have disclosed the information late in bad faith or deliberately delayed the adjudication of its claim of privilege. The Court therefore will consider the merits of the privilege claim.

The documents on pages 1-16 and 150-202 contain notes Verner took on taped interviews, and were used to assist the DA's office in deciding whether to prosecute Duncan. The interviews were already turned over to plaintiffs. The documents fall squarely under the deliberative-process privilege. *See Gomez*, 126 F.R.D. at 436.

The document on page 817 contains Verner's impressions of the strengths and weaknesses of the case against Duncan. The documents on pages 921-24 are model jury instructions with handwritten notes on them that also contain Verner's impressions of the strengths and weaknesses of the case against Duncan. The notes on those documents were made by Verner to assist the DA's office in deciding whether to prosecute. They also therefore fall squarely into the deliberative-process privilege. Plaintiffs have not proved a sufficient need for the documents to overcome the privilege.

Accordingly, the Court will overrule the Magistrate Judge's order as to the documents on pages 1-16, 150-202, 817, and 919-24. The motion to compel will be denied as to the documents

on pages 1-16, 150-202, and 817.  The motion will be granted at to the documents on pages 919-24, but the DA's office will be allowed to redact the handwritten notes on those pages.

B. **The Attorney Work-Product Doctrine**

The work-product doctrine "protects documents prepared by an attorney if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Mississippi Pub. Emps. Retirement Sys. v. Boston Scientific Corp.*, 649 F.3d 5, 31 n.24 (1st Cir. 2011).  The document must also be "prepared by or for a party, or by a party's representative." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 139 F.R.D. 269, 274 (D. Mass. 1991) (citing *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D. Mass. 1988)).  The privilege is "aimed centrally at protecting the *litigation process*, . . . specifically, work done by counsel to help him or her in *litigating* a case." *United States v. Textron Inc. and Subsidiaries*, 577 F.3d 21, 30-31 (1st Cir. 2009) (emphasis in original).

It is not entirely clear whether the work-product doctrine protects the documents at issue, because the DA's office is not a party to this lawsuit.  Rule 26(b)(3), which codifies that work-product doctrine, is limited to "things that are prepared . . . by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A); *see also F.T.V. v. Grolier Inc.*, 462 U.S. 12, 25 (1983) (stating that "the literal language of the Rule protects materials prepared for *any* litigation or trial *as long as they were prepared by or for a party to the subsequent litigation*) (second emphasis added); Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit."); 6-26 Moore's Federal Evidence – Civil § 26.70 ("If the

document if prepared for a nonparty to the litigation, work product protection does not apply, even if the nonparty is a party to closely related litigation.").

Thus, "many courts have found the work-product privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery by a litigant in a related and subsequent civil lawsuit." *Ostrowski v. Holem*, 2002 WL 31956039, at *4 (N.D. Ill. Jan. 21, 2002) (collecting cases); *see also Klein v. Jefferson Parish Sch. Bd.*, 2003 WL 1873909, at *3 (E.D. La. Apr. 10, 2003); *Boyd v. City and Cnty. of San Francisco*, 2006 WL 1141251, at *3-4 (N.D. Cal. May 1, 2006); *Carter v. City of Philadelphia*, 2000 WL 632988, at *1 (E.D. Pa. May 5, 2000). There appears to be no contrary authority in this circuit, and one district court has agreed. *See Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432, 434 n.1 (D.N.H. 1989).

The DA's office contends that attorney work product from third parties is protected by Fed. R. Civ. P. 45(d)(2), which governs objections to subpoenas served on third parties. It also contends that the common-law work-product protection extends beyond the plain text of Rule 26(b)(3), citing *Wood v. McCown*, 784 S.W.2d 126 (Tex. App. 1990).[3]

Several courts "have extended the work-product protection to non-parties when that vindicated the purposes underlying the doctrine." *Jean v. City of New York*, 2010 WL 148420, at *2 (E.D.N.Y. Jan. 12, 2010) (collecting cases). "The purposes underlying the doctrine, gleaned from *Hickman v. Taylor*, 329 U.S. 495 (1947), include protecting an attorney's ability to formulate legal theories and prepare cases, preventing opponents from "free-loading" off their

---

[3] The DA's office also cites *Federal Election Comm'n v. Christian Coalition*, 179 F.R.D. 22 (D.D.C. 1998), for the proposition that the work-product doctrine protects non-parties. That case is inapposite because it interpreted Rule 26(b)(3) to determine whether to approve a stipulated protective order seeking to withhold the documents allegedly protected by the work-product doctrine from public view. 179 F.R.D. at 23-24. No party has moved for a protective order in this case.

11

adversaries' work, and preventing interference with ongoing litigation." *Id.* For example, the Texas Court of Appeals in *Wood* held that the work-product doctrine protected a defense attorney's file to protect "an attorney's willingness to record and retain his mental impressions, factual investigations, or legal research." 784 S.W.2d at 129. In *Jean*, the court upheld a state prosecutor's assertion of the work-product doctrine in civil case because "the statute of limitations ha[d] not expired on the charges for which the plaintiff was arrested" and "there [was] at least the possibility of further litigation between the DA and the plaintiff." *Jean*, 2010 WL 148420, at *3.

The issue is therefore whether common-law attorney work-product doctrine, as described in *Hickman*, extends to the documents at issue in this case. The Court turns to that analysis.

### 1. **Objections by Plaintiffs**

Plaintiffs contend that the documents on pages 262-63 are not protected by the attorney work-product doctrine because they were not prepared in anticipation of *this* lawsuit.[4] Even if the doctrine did not protect documents prepared in anticipation of previous litigation, the documents here contain information regarding the DA's office's approach to activity in this lawsuit. They also contain almost no facts about the circumstances of Stamps's death, and therefore are of limited relevance to plaintiffs.

The work-product doctrine exists to allow an attorney to "prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 511. The documents at issue are e-mails between attorneys of the DA's office about the strategy and

---

[4] Plaintiffs' statement of the law is also incorrect, as the work-product doctrine "protects documents prepared in previous litigation." *Colonial Gas Co.*, 139 F.R.D. at 275; *see also* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (recognizing work-product protection for documents prepared in anticipation of prior litigation as the "sounder view," and collecting cases at n.47).

approach the office would take toward this case. Because the interests outlined in *Hickman* are fully implicated by these documents, the Court finds that the Magistrate Judge's decision that they are protected by the attorney work-product doctrine was not clearly erroneous or contrary to law.

Accordingly, the Court will adopt the Magistrate Judge's order as to the documents on pages 262-63.

### 2. Objections by the DA's Office

The DA's office contends that the documents on pages 100-01 are protected by the attorney work-product doctrine. Those documents are notes prepared by a police officer working on the investigation of Stamps's death. Verner was handed these notes at the scene of Stamps's death but he cannot remember which officer handed them to him.[5] The notes themselves contain a factual timeline of the events leading up to Stamps's death.

Preventing disclosure of those notes does not implicate any of the interests protected by the work-product doctrine. Again, those interests include protecting an attorney's ability to formulate legal theories and prepare cases, preventing opponents from freeloading off their adversaries' work, and preventing interference with ongoing litigation. *Jean*, 2010 WL 148420, at *2. The notes in question contain purely factual statements and do not include any opinions or impressions. The Court sees no reason, and the DA's office has provided none, as to why the ability of assistant district attorneys to formulate legal theories and prepare cases would be affected by the disclosure of notes that are made by police officers in the ordinary course of their employment and that include only factual information. *Cf. Textron*, 577 F.3d at 31 (work-

---

[5] The Court also concludes that the late production of this information does not constitute waiver of the attorney work-product doctrine by the DA's office.

product doctrine "is not a privilege designed to help the lawyer prepare corporate documents or other materials prepared in the ordinary course of business").

Disclosure of the notes from a prosecutor's file in a subsequent civil suit likewise does not implicate "the potential economic vice of a less diligent attorney raiding the file of a previously diligent attorney," which may arise in parallel civil proceedings. *Schultz v. Talley*, 152 F.R.D. 181, 185 (W.D. Mo. 1993) (internal quotation omitted). And finally, the interest in avoiding interference with pending criminal cases is not implicated here because the DA's office has already decided not to prosecute anyone for Stamps's death. *See Hernandez*, 1997 WL , at *2 (N.D. Ill. Nov. 13, 1997) ("[S]ince the underlying criminal case has been closed, there are no concerns with jeopardizing an ongoing criminal investigation in this case."); *Klein*, 2003 WL 1873909, at *3 (the same); *Ostrowski*, 2002 WL 31956039, at *4 (the same).

Because the interests underlying the attorney work-product doctrine are not implicated as to the disclosure of the documents on pages 100-01, the Court declines to extend the doctrine to protect them. *See Textron*, 577 F.3d at 31 ("Where the rationale for a rule stops, so ordinarily does the rule."). The Magistrate Judge's order granting the motion to compel as to those documents was not clearly erroneous or contrary to law.

## IV. Conclusion

For the foregoing reasons, plaintiffs' motion to compel is GRANTED as to the documents on pages 100-01 and 919-24, and DENIED as to the other documents in dispute. The Middlesex District Attorney's Office may redact the handwritten notes on pages 919-924 before disclosure. To the extent that the Magistrate Judge's order was not objected to, that order is ADOPTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: April 16, 2014　　　　　　　　　　United States District Judge